Allen, J.
The 35th section of the act of March 1832, incorporating The James River and Kanawha Company, provides, that “no order shall be made, and no injunction shall be awarded, by any court or judge, to stay the proceedings of the company in the prosecution of their works, unless it be manifest, that they, their officers, agents or servants, are transcending the authority given them by the act, and that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages.” This provision of the charter seems to have been derived from a similar clause contained in the act of February 1823, which was an amendment to the act of February 1820; two laws which, taken together, superseded the old James River Company, converted it into a mere state agent, and vested the whole control of the contemplated *302 improvement in the state authorities. The act of 1823 provided, that the pendency of any proceedings, in any suit of the nature of a writ of ad quod damnum, or any other proceedings, should not hinder or delay the proSress ^ie > and no order should he made or injunction awarded by any court, by which the progress of the work should be arrested; it being the true intent and meaning of the act, that all lands should be liable to condemnation, and that the proprietor should be compensated in damages. Under these laws, no court or judge is authorized to arrest the progress of the work, unless it is manifest that the company is transcending its authority, and that the interposition of the court is necessary to prevent injury which cannot be adequately compensated in damages. Both circumstances must concur. Remedy was provided for all such damages as the legislature deemed necessary to compensate, where the company did not transcend its authority. Still it is apparent, that damages for which no adequate compensation could be made, might be sustained from the works of the company acting within the limits of its authority. For instance, the health of the proprietors in the immediate vicinity of the canal, or of the refluent waters of the ponds and reservoirs, might be seriously affected. For such injuries no adequate compensation could be made. But the legislature did not consider it proper, that a great public work, intimately connected Avith the wealth and prosperity of the Avhole state, should be arrested, in consequence of such partial and unavoidable inconveniences. ' If the company has not transcended its authority, and these injuries and inconveniences are the necessary consequence of such a work, its proceedings cannot be arrested.
The enquiry, then, is, has the company, in the work complained of, transcended its authority ? If it has not, the question is settled. If it has transcended its authority, it would then be proper to examine, whether the *303 plaintiffs below are likely to sustain such injury that it could not be adequately compensated in damages.
For the purpose of ascertaining whether the company has exceeded its authority, we must look to the first act incorporating a company to improve the navigation«of James River, to discover what was the character of the improvement contemplated; enquire what was done by the old James River Company to effect that object; and then find out what rights belonging to the old company, are vested in the new, and the extent of its authority under the various laws which have passed on the subject. The first act, that of October 1784, incorporating the old James River Company, recites, that the clearing and extending the navigation of James River from tide water upwards to the highest point practicable on the main branch thereof, will be of great public utility, and that it may be necessary to cut canals and erect locks or other works on the sides of the river; and as it would be essential in the cutting of canals, to pass through the lands of individuals, the act provided for the condemnation of the lands necessary for the canal &c. and for the assessment of damages to the proprietors. The first act contemplated the extension of the navigation from tide water to the stream above. To accomplish this, canals round the falls would be necessary, and power was conferred on the company to acquire the land necessary for that purpose. The legislature could not have been ignorant, that if the improvement was made, in the manner contemplated, on the north side of the river, the canal must pass through the city of Richmond. It was legislating within view of the ground, and within hearing of the falls which created the greatest obstruction to the navigation of the stream. The charter did not restrict the company in the choice of the sides of the river: the public interest, indeed, required that it should conduct the canal on the north side, if possible, for there was situated the seat of government, and a *304 growing city, and one object of the work was to cherish and foster it. Under this act, the company had full power to pass through the city, and it commenced operations. At a very early day, it constructed a canal Pass™§ part through C street, and terminating in a basin, which, on one side, bounded upon and overflowed part of C street; a deep ravine occupied a part of the ground of that street, and constituted a portion of the basin. These works, so constructed, have continued in use ever since. If any doubt of the authority of the company to construct them originally, could have been entertained, the legislature has since recognized them as existing works of the company. Thus, in 1818, an act was passed authorizing Edward Trent to erect a toll-bridge across the basin of the James River Company, the direction of 9th street in the city of Richmond, if the company should consent thereto, and securing to the company the right of purchasing the bridge upon paying the value of the materials and workmanship. And when, by the acts of 1820 and 1823, the company was converted into a state agent, the state in fact becoming the owner of the works and controlling the whole of them, the basin and canal were continued on the ground originally occupied, and were held and enjoyed by the state, in the name of its agent, The James River Company; the company itself then consisting of some of the chief functionaries of the government, who ex officio constituted the board of president and directors. Under this management, the works were extended; and by an act passed in February 1825, it was provided, that soon as the lower section of the canal should be completed from the basin in the city of Richmond to Pleasants'1 s Island, the company should be entitled to demand certain additional tolls. These various acts leave doubt as to the authority of the old James River Company to conduct its improvements through the city; that, after it had done so, adopting the line through 0 street *305 now complained of, its works, whilst it held them, wore recognized as its property by the state; and that when the state became, in effect, the owner, they were by state authority kept up and enjoyed. In this condition things, the act incorporating the present company passed. The whole interest of the commonwealth in the works and property of the then James River Company, was transferred to the new company, together with all tolls, rents and other emoluments, rights, privileges and immunities, which were then enjoyed by the James River Company. The preamble of the act incorporating the new company recited, that the measures hitherto adopted to connect the tide water of James River with the navigable waters of the Ohio, had been found inadequate to the object. The 22d section left it to the option of the new company, to adopt one of three modes of improvement; and if that of a canal should he adopted, the 23d section provided, that it should be not less than forty feet wide at the top, twenty-eight feel wide at bottom, with not less than four feet depth of water at all seasons of the year. Under this charter, the present company has come into existence. It has adopted the mode of improvement by a canal, and to comply with the provisions of the charter, and accommodate the trade passing on a canal of such capacity, it has found it necessary to widen that portion passing through C street, and to build a wall along the southern margin of the basin on C street. By doing so, it is alleged, it encroaches on the street, though a width of forty feet still left for the street. Was the company authorized by its charter to make this encroachment ? for if it was, then, whatever injury may ensue to the property holders on the street, an injunction cannot be awarded. The history of the acts of the old company proves that it was authorized to pass along this line, that it did so, and, that its works were recognized by the state, both before and. after they became state property; and we have seen, *306 that every thing owned by the old company was transferred to the new. The new company, then, unquestionably by this transfer, was entitled to hold, occupy and enjoy the works, as they had been held by the old comPany and the state. But in the event of its adopting a particular plan of improvement, it was required to enlarge its canal. It has adopted this plan, and must of necessity be authorized to encroach on the street, to give its canal the increased capacity required by its charter. The increased capacity of the canal requires, in the judgment of the company, a wall along the basin, to give the proper depth, so that boats navigating the canal can approach the streets and wharves to receive and discharge their freight. It is not necessary for me to say, whether this judgment has been discreetly exercised; though from the facts developed, it would seem to have been exercised in this case, in a manner best calculated to promote the interests of these very property holders, the convenience of the public, and the welfare of the company. The only enquiry that I deem it necessary to make, is, whether the company was authorized under its charter and the laws taken in connection with it ? An examination of those acts leaves no doubt upon the subject; and if any damage has been sustained, the parties injured must seek their redress elsewhere. The company has done and proposes to do nothing which the law did not authorize ; and acting within the limits prescribed, it cannot be arrested by injunction.
It is argued, however, that the charter prescribes the mode of acquiring and condemning land when wanted for the purposes of the canal; and as there is no provision for the condemnation of a street, the law could not have contemplated any occupation of it for a canal. And this has led to a learned and able argument upon the subject of Highways, the Jus Publicum &c. I do not deem it important to discuss those questions. If the fee in the street is in the original proprietor, subject to *307 the easement, then there is a proprietor who is provided for by the act. If it is in the city corporation (and I incline to think that there is, and from necessity must be, a difference between, streets in cities and towns, and ordinary highways, and that the fee of the streets should be held to be in the city or town authorities), then the corporation is the proprietor, and can proceed, under the act, for compensation; if it is the commonwealth, then the commonwealth has by law authorized the improvement, and required the enlargement of the canal; and that necessarily leads to an encroachment on the street. For all the purposes of this case and argument, it is sufficient to say, the law authorizes the company to conduct the canal through the city, and to occupy any property not expressly excepted. Streets do not fall within any of the exceptions, and therefore the company has a right to occupy them. If, by doing so, it inflicts injury on any individual, his remedy is at law and in damages, but he cannot arrest the work.
Tucker, P.
In whatever light I have been enabled to view this case, I am perfectly satisfied, that the injunction never should have been granted, and that upon the hearing it should have been altogether dissolved.
At the very threshold of this enquiry is the question of jurisdiction; a question first to be disposed of, since, without jurisdiction, this court has no authority to decide the merits of the controversy, except so far as they are inseparably connected with, and lay a foundation for, the exercise of jurisdiction. I shall proceed, therefore, to enquire, whether the case presented furnished a proper ground for the exercise of equitable jurisdiction by way of injunction ? And in doing this, I shall not find occasion to look into the decisions of the courts of chancery, as we are furnished by a higher authority, with a well defined rule which we are not permitted to disregard : I mean the act of 1832. By the 35th section of *308 that act, it is provided, that “ no order shall be made, and no injunction shall be awarded, by any court or to stay the proceedings of the company in the . . . prosecution oi their works, unless it be mamfest that they, their officers, agents or servants, are transcending the authority given them by the act, and that the interposition of the court is necessary to prevent injury that cannot be adequately compensated in damages.” Whether the jurisdiction of the courts of equity in reference to the company, be diminished or not, it may safely be assumed, that it is not extended; and we cannot therefore err, in either aspect, in making this section our guide.
The first question that has been made as to its construction is, whether a concurrence of both conditions is necessary to give the jurisdiction, or whether the existence of only one will not suffice ? Upon this question, this court has already pronounced in the case of the Tuckahoe Canal Co. v. the Tuckahoe Railroad Co. 11 Leigh 42. In that case, it was declared, that it was not a sufficient ground of jurisdiction, either that the company was transcending its powers or that an injunction was necessary to prevent irreparable damage. A concurrence of both was necessary to justify the restraining jurisdiction. The words are too clear to require or admit explanation. The copulative “ and ” leaves no doubt that both grounds must concur, or the power to injoin does not exist. We must do violence to the language, and impute to the legislature the use of “ and” for “ or,” if we construe the clause otherwise. We should do more: we should violate the obvious spirit and meaning of the law. The whole course of legislation for years in relation to this and other companies incorporated for great public improvements, has indicated the legislative intention to prevent the suspension of operations, and leave the party injured to his ad quod damnum, or his action for damages. This may *309 bo seen by the act of February 1823, § 22. and by the provisions of the act of 1832 (the charter of the present company) which we are considering ; in which last, we fmd it provided, that even before proceedings for demnation have been instituted, the company may enter upon the lands laid out by them and apply the same to the uses of the company; and that no injunction shall be granted to restrain them unless under the concurrent circumstances of violated power and irreparable damage. And can we doubt, that those provisions are wise and salutary ? What public improvement could be successfully prosecuted without them? If every individual along the line of the improvement could be entertained on frivolous grounds, and permitted to arrest the works, what end would there be to the mischief? Did not the legislature foresee, and act upon the prescience, that whether the individual complaining sustained irreparable injury or not, the company was sure to suffer the infliction of such injury under the operation of the injunction? and not the company only, but the whole public upon the line of the canal ? If the individual be cast, and victory declares for the company, yet by many such victories they will be undone. Have they the means of recovering adequate compensation in damages ? Admitting adequate security to be given, instead of the paltry sum of 2000 dollars for arresting the works of this great and important company for three years, how are its damages to be adequately ascertained ? They depend upon the tolls it may have lost, and the dead capital and unemployed labourers in its service. - Nor is this all. Who can estimate the injury to others ? Who can compensate the farmer and the planter for the mischief he sustains by every day’s unnecessary obstruction of the improvement? Can he justly demand compensation from the company, whose hands are tied against its will ? A breach in the canal occurs which a few days might remedy; but the repair is arrested by some cap *310 tious litigant for months and years. Where is the redress of the whole population, who depend upon the for transportation, and are of course unprovided with any other ? The basin is drawn off for repairs, may require but a few weeks: but some dissatisffed person who cannot, or will not, see what is for his own or the public advantage, ties up the company’s hands for years. In the mean time the mills and manufactories dependant upon it for then supplies of water, are stopped in their operations and heavy losses axe sustained: who shall indemnify them? The company? As to it, the act complained of is in invitum. The plaintiff in the injunction, for his improper and officious meddling ? However he might deserve to be held responsible, it might be difficult to reach him by any form of action; and his surety in the injunction bond certainly could not he made liable to any other than the company. Considerations like these, besides the mischiefs to the commonwealth, ever consequent upon such ruinous injuries to her citizens, doubtless gave occasion to the provisions we have been considering. They are wise and salutary; and we should advance the objects of the legislature, instead of defeating them.
There is, however, a conclusive reason for the provision, that no injunction should be granted without the concurrence of the two circumstances of violated authority and irreparable damage. The requisition both of wrong and injury to sustain an action, is one of the most familiar principles in the law. Upon what ground could Anderson be permitted to injoin the company, if they were pursuing the authority given them by law ? Or, upon what principle could he he permitted to arrest their progress, if it did him no injury, and was likely to do him none ? If not injured, he has no right to complain ; and though injured, he must submit to what the law has authorized. There must, then, he an unlawful act, and danger of irreparable injury to himself, to con *311 stitute any claim to the interference of the court, by m-J junction.
Assuming then this construction of the law, let us next enquire, whether the two prerequisites exist in this case, which the law demands. I am of opinion that neither exists: I am satisfied, that the .plaintiffs below are not injured, but are benefited by the operations of the company; and that it does not appear that the company is manifestly transcending its authority.
As to the first—that the plaintiffs are benefited by the operations of the company: this seems to me very obvious in relation to that part of O street which borders on the basin. That street is at present of only an average width of forty feet, the northern part of which shelves towards the water so as to make several feet of it unfit for the use of carts and wagons. Its northern boundary is waving, being indented by the water of the basin, which flows irregularly upon it, so that the narrowest part of the street may be fairly estimated as its present available width, and this is less than forty feet. The projected improvement will make the street of an uniform width of forty feet. It will be protected by the wall from washing away, and will be raised, by it at its northern edge to a level with the rest of the street; thus affording a complete, convenient and permanent passway for the trade, and for every species of vehicle. Besides this improvement of the street, it will afford to the owners of the property coterminous with it, an excellent wharfage or landing place immediately opposite their lots, where heavy loaded boats may lie along side and receive or discharge their cargoes, with great diminution of expense and labour; whereas, in its present condition, the greatest inconvenience and difficulty must often be experienced. With these views of the effect of the change, it is only matter of surprise, that any judicious lot owner should resist the projected improvement. One or two witnesses, it is true, seem to *312 sustain the pretensions of the plaintiffs, hut they can be understood only to speak with reference to the improvement of C street to the width of sixty-five feet, and not to its present condition. No one could ventee upon the ras^ assertion, that the change from that condition to the proposed plan, would injure the parties to the amount of 4000 dollars ; and the respectable witness who made the estimate of injury could not, I am persuaded, have intended to be so understood. . But admitting that the extension and completion of C street to sixty-five feet would be more advantageous to the lot owners, provided its northern limit was bounded by a substantial wall, it still remains to be proved, that such completion and extension will be prevented by the present plan, or that there is the remotest probability of its ever being carried into effect by the city authorities. If the company has no right, under its charter, to cover part of the street with water, the common council of the city may proceed at its pleasure and discretion to fill up the twenty-five feet, and complete the extension to the legitimate limits. But this it is not obliged to do, and is not likely to do. It is not obliged, because, under its power of regulating the streets, it is its province to determine in what manner it is most advisable to regulate them, and I know no power to control it where there is no wanton exercise of its discretion. It is not likely, I should imagine, to attempt the extension, from the situation of that twenty-five feet of street. It varies in depth from fourteen to forty-five feet; and a wall would be necessary of that elevation at least, to effectuate the object. It may, therefore, well be doubted, whether, in the exercise of a judicious discretion over the subject, the common council of the city -vfrould not decide, that it would be better that there should be a good and convenient street of earth of the width of forty feet, and that the residue of the width of the street, which never was available as a passway, and could not be so *313 rendered without immense expense, should be brought into efficient and valuable use by the unexpensive operation of filling it with water, and using it as a road-stead for the convenience of the trade. Hitherto, the common council has manifested no desire to interfere. Though the hands of the company have been tied for three years, the common council has made no advances to extend and complete the street, but it remains in its pristine condition—covered to the extent of twenty-five feet, as it has been, with water to the depth of from fourteen to forty-five feet, and the residue of it in a dilapidated state. If then the plaintiffs are injured by the narrowness of' the street, it is of the common council only that they have reason to complain ; but, in truth and in fact, these complaints are without foundation. The city authorities either approve or acquiesce in what has been done, and is proposed to he done; and wisely too, since it is judicious as it respects the public, and highly advantageous to the coterminous lot holders.
With respect to that part of the street occupied by the canal, it cannot be denied, that it could have been extended and improved with less expense than that which lies upon the basin: and it is also true, that it was not to the same extent covered with water. But on the other hand, it does not adjoin the plaintiffs’ property. The property of the plaintiff Anderson lies in another square to the eastward, and that of Mills two squares off. As well might a lot owner at Rocketts complain of the narrowing of the main street on Shockoe hill, and bring his private action or bill for an injunction. Such remote injuries common to the whole population are to be remedied by the action of the constituted corporate authorities, or by prosecution for a nuisance. If Anderson and Mills can implead the defendants for narrowing a street not contiguous to their property, every man in the community might do so. To prevent this evil, the law forbids an action by a private individual *314 for a common nuisance, unless he can shew a special in-Íury 5 an^ hence it would seem to follow, that an injunction will not lie for anticipated injury arising from . „ • t r ■ ■ a common nuisance. Joe this as it may, 1 am of opinion, that the plaintiffs were not entitled to their injunction to restrain the company’s operation along that portion of the street which does not join their property, but they should have been left to their special action upon the case for any injury sustained by them individually. It is not perceived that their damages, if any, could not have been easily ascertained, and adequately compensated.
If I am right in these views, it is clear, that one of the terms made essential as a prerequisite to an injunction against the company does not exist in this case. The other is equally wanting. It is “not manifest that the company is transcending the authority” given it by its charter. By the requisitions of the charter, the company was required to connect the upper navigation of James River with tide water. It was obvious that this could only be done by passing through the city of Richmond. For the purposes of its works, it is authorized to enter upon any lands and tenements through which it desires to conduct its canal, without any limitation or exemption, except of the dwelling house, yard, garden or curtilage of any proprietor. The streets and highways, which must obviously be encroached on, are not excepted. The streets of Richmond, therefore, are as much subject to be entered upon for the use of the company, as any other property. Moreover, it is provided that “ even before any proceedings shall have been instituted” for the condemnation of the required property, the company may enter upon the lands laid out by it, and apply them to its uses. The company is required, indeed, to proceed also to condemn. But if it fails, it is not to be arrested, but the proprietor may himself proceed. And this provision was judicious. *315 It might he difficult, as it proves to be here, to ascertain the proprietor, and it would have been mischievous to arrest a great work till this could be done. The company, therefore, was authorized to take the property beforehand. This it has done. Its doing so is no barrier to the action of any person, whether private, public or corporate, who may have title to the property, except so far as public or corporate rights may have been yielded by the operation of the statute. On this subject I give no opinion, because it is unnecessary to do so in settling the question of jurisdiction. It is clear, however, that if the title is in the heirs of Byrd, or of his trustees, their proceeding is not barred or impeded by any act of the company. And so as to the plaintiffs, if indeed, under the 36th section of the charter, any proceeding can be had by a party claiming only an easement.
In no aspect of the case, then, can I perceive that the company has transcended, or is transcending, its authority ; and on this point also the plaintiffs’ case is radically defective.
The injunction ought never to have been granted, and should have been wholly dissolved.
Brooke and Cabell, J. concurred.
Decree reversed; and ordered, that the injunction should be dissolved and bill dismissed, with costs.